**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY CARD, | ) | CASE NO. 1:13-CV-01305 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Kimberly Card ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying

her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"),

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security

Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq.* ("Act").  This case is before the undersigned

United States Magistrate Judge pursuant to the consent of the parties entered under

the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the

Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

On May 24, 2010, Plaintiff filed her applications for POD, DIB, and SSI and

alleged a disability onset date of June 25, 2008.  (Transcript ("Tr.") 14.)  The

applications were denied initially and upon reconsideration, and Plaintiff requested a

hearing before an administrative law judge ("ALJ").  (*Id.*)  On November 17, 2011, an

ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented

by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On December 5, 2011, the ALJ found Plaintiff not disabled.  (Tr. 11.)  On May 1, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On June 13, 2013, Plaintiff filed her complaint challenging the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 18, 19.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in giving little weight to the opinion of Dr. Hanahan, Plaintiff's treating physician; and (2) the ALJ failed to apply the appropriate standards in the evaluation of Plaintiff's pain, nausea, and vomiting.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in September 1975 and was 32-years-old on the alleged disability onset date.  (Tr. 23.)  She had at least a high school education and was able to communicate in English.  (*Id.*)  She had past relevant work as a housekeeper and as an assistant manager at a fast food restaurant.  (*Id.*)

### B.    Medical Evidence

Treatment notes from Geisinger Wyoming Valley (Geisinger) dated July 2008 reflect that Plaintiff had a follow-up visit after an endoscopic procedure that resulted in a diagnosis of midepigastric and right upper quadrant abdominal pain.  (Tr. 221.)  An abdominal ultrasound from August 13, 2008, revealed a slightly enlarged liver.  (Tr.

2

280.)

Treatment notes from Geisinger dated May 2009 reflect diagnoses of nausea with vomiting and heartburn.  (Tr. 234.)  An ultrasound of Plaintiff's abdomen revealed a slightly enlarged liver, status post cholecystectomy, normal pancreas, and questionable trace amount of gas within the mild portion of the common bile duct likely related to post-surgical changes.  (*Id.*)

An upper GI endoscopy performed in July 2009 in response to Plaintiff's complaints of heartburn revealed gross lesions in the duodenum and gastritis without hemorrhage.  (Tr. 286.)   Plaintiff was advised to continue on her present medications and follow an anti-reflux regimen indefinitely.  (*Id.*)

An upper endoscopic ultrasound (EUS) performed in December 2009 for exclusion of chronic pancreatitis and epigastric abdominal pain revealed a normal pancreas, with no criteria present for chronic pancreatitis.  (Tr. 301.)  The upper endoscopy was suspicious for short segment Barrett's esophagitis and a few small gastric erosions.  (Tr. 300.)

A patient note from a treating physician at Hazelton Professional Services on April 9, 2010, reported that Plaintiff had chronic pancreatitis with continuous abdominal pain requiring narcotic pain control.  (Tr. 416-417.)

On October 22, 2010, Minaben Patel, M.D., examined Plaintiff at the request of the Bureau of Disability Determination.  (Tr. 311-316.)  Plaintiff denied having any chest pain, shortness of breath, abdominal pain, nausea, or vomiting.  (Tr. 311. ) She had left lower quadrant pain and muscular pain.  (*Id.*) She reported a history of cholecystectomy, gastroesophageal reflux, hepatitis, and alcohol use.  (*Id.*)  Dr. Patel

3

noted that Plaintiff had pancreatitis in the past.  (Tr. 313.)  Plaintiff's examination was normal.  (*Id.*)  Dr. Patel completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities, opining that Plaintiff could lift and carry 20 pounds frequently and did not have any limitations with regard to standing and walking, sitting, or pushing and pulling   (Tr. 315.)  Dr. Patel further concluded that Plaintiff had no postural limitations or environmental restrictions.  (Tr. 316.)

In October 2010, Plaintiff was referred to Athar Altaf, M.D., for complaints of upper abdominal pain.  (Tr. 394.)  Dr. Altaf diagnosed gastroesophageal reflux disease (GERD) and chronic (stable) pain, and recommended that Plaintiff continue with her current management.  (Tr. 395.)

On October 29, 2010, a reviewing physician for Social Security found that Plaintiff did not have a medically determinable mental impairment.  (Tr. 317, 327.)

Medical records from December 13, 2010, show that Plaintiff was diagnosed with chronic pancreatitis and that she renewed her pain medication.  (Tr. 402-403.)  She reported that she "feels fine."  (Tr. 402.)

A computed tomography (CT) scan of Plaintiff's abdomen performed in January 2011 revealed that Plaintiff's liver, biliary tree, pancreas, spleen, adrenal glands, and kidneys were normal.  (Tr. 390.)  There was questionable minimal wall thickening of the sigmoid colon which could be seen with a very mild colitis; however, the colon was relatively decompressed making the finding somewhat nonspecific and possibly a normal finding.  (*Id.*)

Plaintiff presented to Hazleton General Hospital in February 2011 with complaints of chest pain, noting that she had been under increased stress the past few

4

days.  (Tr. 332.)  Plaintiff was diagnosed with palpitations.  (Tr. 333.)  At a follow-up visit in March 2011 with Yaqoob A. Mohyuddin, M.D., a cardiologist, a note revealed that Plaintiff had a 30-day event monitor which showed no significant arrhythmias.  (Tr. 434.) Plaintiff denied having chest pain.  (*Id.*)

Plaintiff began treatment with Paul C. Hanahan, M.D., in May 2011 after she moved to Ohio.  (Tr. 443.)  On May 17, 2011, Dr. Hanahan's impression was chronic pancreatitis with pancreatic insufficiency and chronic pain.  (*Id.*)  Dr. Hanahan prescribed MS Contin for pain, Morphine Sulfate for breakthrough pain, and Valium. (*Id.*)

On May 24, 2011, Dr. Hanahan submitted a Basic Medical Report to Job and Family Services in which he described Plaintiff's conditions as pancreatitis, hepatitis, and the prior placement of three stents.  (Tr. 445.)  Dr. Hanahan opined that Plaintiff could lift and carry up to ten pounds and stand and walk for 15 minutes at a time, up to one to two hours total.  (Tr. 446.)  He concluded that Plaintiff was moderately limited in her ability to push, pull, bend, and perform repetitive foot movements.  (*Id.*)

In July 2011, Dr. Hanahan referred Plaintiff to Keith Friedenberg, M.D., a gastroenterologist.  (Tr. 441.)  Dr. Friedenberg instituted no changes in Plaintiff's treatment.  (*Id.*)  In August 2011, Plaintiff told Dr. Hanahan that she had a "good month" with no attacks, and that she would like to gradually come off of her medication.  (Tr. 439-440.)  On September 21, 2011, Dr. Friedenberg saw Plaintiff for an acute pancreatitis attack.  (Tr. 453.)  A CT of her abdomen showed no significant abnormality in the abdomen, except for borderline splenomegaly, and showed no evidence of acute pancreatitis.  (Tr. 483-484.)

In September 2011, Dr. Hanahan completed a physical assessment form on Plaintiff's behalf.  (Tr. 391-393.)  Dr. Hanahan opined that Plaintiff: could stand/walk for about three hours total and sit for about four hours total during an eight-hour workday; could sit 20 minutes continuously and stand 45 minutes continuously; would need to be able to sit/stand at will; could frequently climb stairs; could occasionally stoop and crouch; could never twist or climb ladders; must avoid concentrated exposure to extreme cold; and must avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards such as machinery and heights.  (Tr. 391-392.)  Dr. Hanahan concluded that on average, Plaintiff's impairments would cause her to be absent from work about three times per month.  (Tr. 393.)  He also opined that Plaintiff would need to lie down at unpredictable intervals during a work shift about one to two times per week.  (Tr. 392.)

Dr. Friedenberg noted in October 2011 that "after last visit [Plaintiff] went to ER, had labs and CT scan there all normal, normal pancreas not even calcifications...pain settled down, Donnatol helped."  (Tr. 566.)

In December 2011, Plaintiff told Dr. Hanahan that her pain medication was effective in controlling her pain.  (Tr. 515.)

**C.      Hearing Testimony**

**1.      Plaintiff's Hearing Testimony**

Plaintiff testified that she was being treated for pancreatitis and hepatitis by Dr. Hanahan and Dr. Friendenberg.  (Tr. 37.)  She saw Dr. Hanahan once per month and Dr. Friedenberg whenever she had a flare up.  (Tr. 38.)  She described a flare up as

6

when her pancreas flares up and she gets stabbing, sharp feelings in her side that cause her to curl up into a ball and not move.  (*Id.*)  These flare ups last three to four days.  (*Id.*)  Plaintiff received treatment in the form of pain medication, pancreas enzymes, and morphine.  (*Id.*)  She testified that her medications make her tired.  (*Id.*)  She had trouble keeping food down and took nausea pills everyday.  (Tr. 40.)  She used to weigh over 200 pounds but lost weight due to her inability to tolerate food.  (Tr. 47.)  She has weighed 165 pounds for the past year.  (*Id.*)

Plaintiff lived with her two children, ages twelve and seven.  (Tr. 40.)  She sometimes prepared their meals.  (*Id.*)  She did not have a driver's license and did not go grocery shopping.  (Tr. 41.)  Plaintiff spent most of the day in bed.  (*Id.*)  She testified that she had constant pain that became worse when she had flare ups.  (*Id.*)  She could not sit for too long because it put pressure on her stomach.  (Tr. 42.)  She could stand for about 15 or 20 minutes.  (Tr. 43.)  Plaintiff stated that there were no other medical procedures that could be done to treat her condition.  (*Id.*)

### 2.  Vocational Expert's Hearing Testimony

Mary Harris, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience who was able to lift up to 20 pounds occasionally and 10 pounds frequently; walk six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; frequently climb ramps and stairs but never ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and had an unlimited ability to push and pull.  (Tr. 57.)  The VE testified that the individual would be capable of performing Plaintiff's past work as a

7

housekeeper and as a manager at a fast food restaurant.  (*Id.*)

The ALJ asked the VE to consider a second hypothetical individual who could lift up to 10 pounds occasionally; stand and walk for four hours out of an eight-hour workday; sit for four hours out of eight-hour workday; frequently climb ramps and stairs but never ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and frequently push or pull.  (*Id.*) The VE testified that the individual would perform work as a telemarketer (Dictionary of Occupational Titles ("DOT") 299.357-014), receptionist (DOT 237.367-038), or order clerk (DOT 249.362-026).  (Tr. 58.)

The ALJ asked the VE to consider a third hypothetical individual who was able to lift up to 10 pounds occasionally; stand/walk for two hours out of an eight-hour day; sit for six hours out of an eight-hour day; frequently push and pull; frequently climb ramps and stairs but never ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, or crawl; and would require a sit-stand option.  (*Id.*)  The VE testified that the individual could perform the jobs she previously listed.  (*Id.*)

The ALJ asked the VE to consider a fourth hypothetical individual who could lift 10 pounds occasionally and up to nine pounds frequently; stand and walk for three hours out of an eight-hour day; sit for four hours out of an eight-hour day; sit for 20 minutes at a time before having to change position; stand for 45 minutes at a time before changing position; would need the opportunity to shift at will from sitting and/or standing/walking; may never perform any twisting type activity; may occasionally stoop and crouch; may frequently climb stairs; may never climb ladders; is limited with regard to pushing and pulling; and would need to avoid concentrated exposure to extreme cold and all exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.  (Tr. 59-

8

60.)  The VE testified that the individual could perform the jobs she previously mentioned, except that the jobs could not be performed on a full-time basis due to the limitation of standing/walking three hours total and sitting four hours total during an eight-hour workday.  (Tr. 60.)   The VE further testified that an employer would generally tolerate only two un-excused, unscheduled absences per month.  (*Id.*)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a

9

severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since June 25, 2008, the alleged onset date.

3.  The claimant has the following severe impairment: history of pancreatitis with residual abdominal pain.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand or walk for two hours per eight-hour workday and sit for six hours out of an eight-hour workday, can perform push/pull action frequently, and can climb stairs, balance, stoop, kneel, crouch, and crawl, frequently.  Additionally, the claimant is unable to climb ladders, ropes, or scaffolds, and requires the ability to change position from sitting to standing as needed.

10

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born in September 1975, and was 32-years-old which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2008, through the date of this decision.

(Tr. 16-24.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.

1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.      Plaintiff's Assignments of Error**

**1.      The ALJ Erred in Giving Little Weight to the Opinion of Dr. Hanahan, Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ erred by assigning little weight to the opinion of Dr. Hanahan, Plaintiff's treating physician.  "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by

12

the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and

its purpose is to "let claimants understand the disposition of their cases" and to allow for

"meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation

marks omitted).  Where an ALJ fails to explain her reasons for assigning a treating

physician's opinion less than controlling weight, the error is not harmless and the

appropriate remedy is remand.  *Id.*

Here, the ALJ assigned little weight to the opinions Dr. Hanahan rendered in his

September 2011 assessment of Plaintiff's physical ability to perform work-related

activities.  (Tr. 22, 391-393.)  The ALJ explained:

> Although there is a treating relationship between the claimant and Dr.
> Hanahan, this medical professional had only seen the claimant for four
> months prior to rendering this opinion.  Moreover, this extreme opinion is not
> supported by the evidence of record.  To the contrary, treatment records
> indicate that the claimant's pain was improving to the point that she and Dr.
> Hanahan were working on reducing her narcotic pain medication (Exhibit
> B11F).  It appears that Dr. Hanahan['s] opinion may be based upon the
> claimant's self-report as opposed to objective findings.  As Dr. Hanahan's
> opinion is inconsistent with the remainder of the medical evidence, it is
> afforded little weight.

(Tr. 22.)  Plaintiff contends that the ALJ did not give "good reasons" for giving less

than controlling weight to Dr. Hanahan's opinion, noting that–contrary to what the ALJ

has concluded–there is no evidence that Dr. Hanahan's opinion was based on

Plaintiff's self report or was in conflict with the medical evidence.  For the following

reasons, Plaintiff's argument is not well taken.

The ALJ did not err in declining to assign controlling weight to Dr. Hanahan's

opinion, because she gave good reasons for doing so and substantial evidence

supports that conclusion.  As the ALJ reasonably observed, it appears that Dr.

Hanahan's opinion was based on Plaintiff's self-reports rather than the objective findings.   Dr. Hanahan's contemporaneous office notes reflect that the disability forms were "completed with patient."  Moreover, when asked on the assessment form what medical findings support the limitations he found, Dr. Hanahan wrote "abdominal pain," rather than detailing which specific diagnostic impressions supported his conclusions.  (Tr. 392.)

Furthermore, as the ALJ noted, Dr. Hanahan's opinions regarding Plaintiff's physical capabilities were not supported by the contemporaneous medical records. (Tr. 22.)  The ALJ explained:

> [Dr. Hanahan's] [t]reatment records periodically note mild tenderness to the epigastric area, but also indicate a plan to begin reducing the claimant's narcotic pain medication at the claimant's request in August of 2011.  At a visit on August 5, 2011, the claimant reported having a good month, with no attacks of pancreatitis.  Physical examination on this date was within normal limits, and the claimant stated that she would like to cease taking her narcotic medications.  Dr. Hanahan and the claimant discussed a strategy for reducing her narcotic intake over a period of time at an office visit on August 31, 2011.

(Tr. 20.)  Plaintiff told Dr. Hanahan in August 2011–only a month before Dr. Hanahan rendered his RFC opinion–that she had a "good month" with no attacks, and that she would like to gradually come off of her medication.  (Tr. 440.)  Furthermore, a CT of Plaintiff's abdomen performed in September 2011 showed no significant abnormality in the abdomen, except for borderline splenomegaly, and showed no evidence of acute pancreatitis.  (Tr. 483-484.)  A month later in October 2011, Dr. Friedenberg, Plaintiff's gastroenterologist, reported that "after last visit [Plaintiff] went to ER, had labs and CT scan there all normal, normal pancreas not even calcifications...pain settled down,

Donnatol helped."  (Tr. 566.)  In December 2011, Plaintiff told Dr. Hanahan that her pain medication was effective in controlling her pain.  (Tr. 515.)  Thus, the ALJ was justified in giving less than controlling weight to Dr. Hanahan's opinion, because his extreme opinion was not supported by medical reports from around the same time.  (Tr. 22.)

For the foregoing reasons, the ALJ did not err in providing little weight to Dr. Hanahan's opinion, as she gave good reasons for doing so: Dr. Hanahan's opinion was in conflict with substantial evidence in the record and appeared to be based on Plaintiff's self-reports as opposed to objective findings.  Accordingly, Plaintiff's first assignment of error does not present a basis for remand.

### 2.    The ALJ Failed to Apply the Appropriate Standards in the Evaluation of Plaintiff's Pain, Nausea, and Vomiting.

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credible complaints of pain, nausea, and vomiting.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  However, the ALJ's credibility determinations must be reasonable and based on evidence from the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must provide an adequate explanation for her credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the

allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).

Rather, the determination "must contain specific reasons for the finding on credibility,

supported by evidence in the case record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave

to the individual's statements and the reason for that weight." Id.

When a claimant complains of disabling pain, the Commissioner must apply a

two-step test known as the "Duncan Test" to determine the credibility of such

complaints. See Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing

Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)). First,

the Commissioner must examine whether the objective medical evidence supports a

finding of an underlying medical condition that could cause the alleged pain. Id.

Second, if there is such an underlying medical condition, the Commissioner must

examine whether the objective medical evidence confirms the alleged severity of pain,

or, alternatively, whether the objectively established medical condition is of such a

severity that it can reasonably be expected to produce the alleged severity of pain. Id.

In making this determination, the ALJ must consider all of the relevant evidence,

including six different factors.[1]  See Felisky, 35 F.3d at 1039–40 (citing 20 C.F.R. §

---

[1] These factors include the following:
    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the claimant's
    alleged pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness, and side effects of any medications
    taken to alleviate the pain;
    (5) treatments other than medication that the claimant has received to
    relieve the pain; and
    (6) any measures that the claimant takes to relieve his pain.

404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors.  *Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in his assessment of Plaintiff's condition.  (Tr. 16-23.)  The ALJ examined Plaintiff's daily activities, her treatments and her responses to those treatments, the clinical examination findings, and the physician statements of record.  (*Id.*)  Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's complaints of pain, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with her RFC.  (Tr. 19.)  Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, she determined that her RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence.  For example, the ALJ detailed the objective evidence indicating the severity of Plaintiff's pancreatic dysfunction:

> Although diagnostic testing results affirm the presence of the claimant's alleged pancreatic dysfunction, they fail to support the claimant's assertion that this condition is disabling.  An abdominal ultrasound from 2008 showed a slightly enlarged liver (Exhibit B1F/20).  A follow-up abdominal ultrasound dated May 13, 2009, demonstrated an unremarkable appearance of the pancreas (Exhibit B6F/58).  Similarly, an abdominal CT performed in

January of 2011 was largely within normal limits (Exhibit B6F/60).  A gastric biopsy dated December of 2009, revealed only mild chronic inflammation, and an upper esophageal ultrasound noted a normal pancreas with a few small gastric erosions and a possible Barrett's esophagus, without evidence of chronic pancreatitis (Exhibit B2F).  A recent abdominal CT from September of 2011 noted borderline splenomegaly, without evidence of acute pancreatitis (Exhibit B13F/24).  These imaging studies conducted during the claimant's alleged period of disability have failed to demonstrate significant abnormalities, instead identifying only mild inflammation and occasional organmegaly.

(Tr. 19-20.)  In finding that her RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence, the ALJ explained that Plaintiff's "history of largely conservative treatment does not support allegations of disabling conditions."  (Tr. 21.)  The ALJ noted:

At her last documented primary care visit with Dr. Mistal in December of 2010, the claimant reported feeling "fine" and reported that her ex-boyfriend had broken in and stolen her pain medications, as he was a drug addict.  (Tr. 20.)

The claimant reported that her abdominal pain worsened with activities and certain foods, and was alleviated by proper diet and medication.  (*Id.*)

Treatment records periodically note mild tenderness to the epigastric area, but also indicate a plan to begin reducing the claimant's narcotic pain medication at the claimant's request in August 2011.  (*Id.*)

At a visit on August 5, 2011, the claimant reported having a good month, with no attacks of pancreatitis.  Physical examination on this date was within normal limits, and the claimant stated that she would like to cease taking her narcotic medications.  (*Id.*)

At her January of 2011 visit, the claimant was assessed with a probable pancreatic flare, but in September 2011, clinical examination and testing failed to demonstrate any evidence of acute pancreatitis.  (*Id.*)

The ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective evidence.  This inconsistency is an appropriate basis for an adverse credibility

18

finding.  *See Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)

("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the

medical reports, claimant's testimony, and other evidence.")

Furthermore, to the extent Plaintiff argues that the ALJ did not adequately

consider the objective findings supporting Plaintiff's allegations of pain, this argument is

not well taken.  Plaintiff notes that she has a longstanding history of midepigastric and

abdominal pain, nausea, and vomiting, and has had multiple surgical procedures

including removal of her gallbladder and a sphincterotomy.  (Plaintiff's Brief ("Pl.'s Br.")

14.)  She also reiterates that she suffers from chronic pancreatitis with continuous

abdominal pain requiring narcotic pain control.  (*Id.*)  Plaintiff does not, however, explain

how this evidence supports a more restrictive RFC than the one found by the ALJ.  It is

well established that the "mere diagnosis" of a condition "says nothing" about its

severity or its effect on a claimant's ability to perform work.  *Higgs v. Bowen*, 880 F.2d

860, 863 (6th Cir. 1988).  Thus, the fact that a physician diagnosed Plaintiff with

chronic pancreatitis and chronic pain did not, alone, require the ALJ to include

limitations specifically related to those diagnoses in Plaintiff's RFC.[2]  When determining

Plaintiff's RFC, the ALJ specifically discussed Plaintiff's diagnoses and considered her

history of pancreatitis with residual abdominal pain to be a severe impairment.  (Tr. 16.)

---

[2]     Treating physician Dr. Hanahan not only diagnosed Plaintiff with certain
physical impairments, but also concluded that those impairments would
cause her to be absent from work about three times per month and lie
down at unpredictable intervals during a work shift one to two times per
week.  (Tr. 391-393.)  As addressed in the previous discussion of
Plaintiff's first assignment of error, however, the ALJ provided "good
reasons" for rejecting this opinion, and thus the ALJ did not err by failing
to include such limitations in Plaintiff's RFC.

Nonetheless, the ALJ concluded that, despite her limitations, Plaintiff was capable of performing sedentary work with some additional limitations.  (Tr. 18.)  For the foregoing reasons, Plaintiff's second assignment of error does not present a basis for remand.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.


_s/ Nancy A. Vecchiarelli_____
U.S. Magistrate Judge

Date: April 10, 2014

20